**Lyman L. RICHARDS, Petitioner,**

v.

**Col. Weldon W. COX, Commandant, United States Disciplinary Barracks, Fort Leavenworth, Kansas, Respondent.**

**No. 2845 H.C.**

United States District Court
D. Kansas.

May 16, 1960.

J. R. Groff (court-appointed), Topeka, Kan., for petitioner.

Wilbur G. Leonard, U. S. Atty., Topeka, Kan., Lt. Col. Peter S. Wondolowski, JAGC Lt. Col. Thomas A. Ryan, JAGC Office of The Judge Advocate General, Dept. of Army, Washington, D. C., for respondent.

HUXMAN, Circuit Judge (assigned).

This cause came regularly on for trial on the 22nd day of March, 1960, at Topeka, Kansas, petitioner being present in person and by his court-appointed counsel, J. R. Groff, and the respondent be-

ing represented by Wilbur G. Leonard, United States Attorney, and Col. Peter S. Wondolowski. Thereupon, the cause being regularly called for trial, statements were made by the respective parties as to their contentions, and arguments were heard by the court. At the conclusion of the hearing, the case was taken under advisement and briefs were requested to be filed. These have been considered by the court. The court finds these facts.

Petitioner, while an active member of the United States Army, was convicted by a General Court-Martial convened in Korea on October 24, 1957, of assault with a carbine, as well as other offenses. He received a sentence of 10 years, dishonorable discharge from the service, and forfeitures. All review proceedings under the Military Code, 10 U.S.C.A. § 801 et seq., have been exhausted.

In this habeas corpus action, he challenges the legality of his sentence. His general contention is that the procedure under which he was tried was so grossly unfair as to deprive him of due process and give this court jurisdiction to review the proceedings under the decision of the Supreme Court in Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 1049, 97 L.Ed. 1508. The philosophy of the Burns case is that where grave questions have been presented and fairly considered by the military court-martial tribunals, the law courts are without jurisdiction to review and consider the same questions. Law courts may interfere only to protect soldiers "from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness rather than finding truth through adherence to those basic guarantees which have long been recognized and honored by the military courts as well as the civil courts." In other words, it is only when the overall picture presented by the record is offensive to the concepts of common justice and fairness that a law court may intervene.

Considering this case in the light of this principle, the court is of the view that it is without jurisdiction and that the case therefore should be dismissed. This conclusion does not mean that the record is, in the court's opinion, free from errors or that it approves fully of the manner in which the trial was conducted.

Here are the facts of the case. After the commission of the offenses and prior to the filing of the charges, petitioner's commanding officer referred him to an Army psychiatrist, Captain Robert R. Komar, for observation and examination to determine his mental condition at the time of the commission of the alleged offenses. Captain Komar examined petitioner and submitted his report to petitioner's commanding officer in which he found petitioner legally sane both at the time of the commission of the alleged offenses and at the time of the examination. Pursuant to the Manual for Courts-Martial, the commanding officer forwarded the court-martial charges to the next superior officer with recommendation that petitioner be tried by general court-martial. The officer exercising summary jurisdiction and special court-martial jurisdiction referred the court-martial charges to an impartial investigating officer for the pretrial investigation required by the Articles of War. Petitioner was represented at the pretrial investigation by Captain Marshall Bailey who was subsequently appointed to represent him at the trial. The pretrial investigating officer interviewed all witnesses in the presence of petitioner and his counsel. He also considered Captain Komar's report. Petitioner and his counsel were offered the opportunity to cross examine all witnesses and to offer testimony of their own. At the conclusion of the hearing, the pretrial investigating officer recommended a trial by general court-martial. The charges and allied papers were forwarded to the officer exercising general court-martial jurisdiction with recommendations that the charges be tried by a general court-martial. This officer referred the court-martial charges and the report of the pretrial investigation and the recommenda-

tion of the commanding officer to the Staff Judge Advocate for consideration and advice, as required by the Articles. The Staff Judge Advocate reviewed the charges and the record submitted to him and advised the Convening Authority that the charges alleged offenses and that they were sustained by the evidence indicated in the report of investigation. He recommended trial by general court-martial. Subsequent to these proceedings, petitioner was tried by general court-martial.

The record reveals that during the trial, petitioner's counsel raised the question of sanity at the time of the offenses through the examination of witnesses who testified. Captain Komar, the Army psychiatrist, testified for the prosecution that petitioner was legally sane. Petitioner did not request that a Special Board of Officers be appointed to determine his mental condition.

After petitioner was found guilty, the record was referred to the Staff Judge Advocate for review. After an examination of the record, he submitted his written opinion to the convening authority finding that the findings of guilty and sentence imposed were correct in law and in fact, and recommended that the findings and sentence be approved. Based thereon, the sentence was approved. The convening authority then forwarded the record of trial to the Judge Advocate General of the Army for review by a Board of Review. The Board of Review in the office of the Judge Advocate General reviewed the entire record. Pursuant to petitioner's request, he was represented at all of these proceedings by qualified military appellate counsel designated by the Judge Advocate General. His counsel submitted an assignment of errors and made written and oral argument thereon before the Board of Review. Among the errors assigned was the claim that the Law Officer committed prejudicial error in the instructions to the court on the defense of insanity. He did not raise the claim that he was denied the opportunity to be examined by a Medical Board of Officers prior to trial.

The Board of Review approved the findings of guilty and sentence as being correct in law and in fact and affirmed the same.

After the decision by the Board of Review, the petitioner for the first time requested that he appear before a Board of Medical Examiners to determine his mental condition. That request was granted. The Board of Medical Officers, after interviewing and observing the petitioner, submitted its report. It was of the opinion that the petitioner was legally insane at the time of the commission of the offenses. The Surgeon General of the Army disagreed with the findings and also held the Board was not properly constituted for the reason that one of the members was not a medical officer. For these reasons, the Surgeon General disapproved the report of the Board. Thereafter, petitioner filed a petition in the United States Court of Military Appeals for a grant of review of the decision of the Board of Review. Pursuant to his request, the same military appellate counsel who had represented him before the Board of Review was designated by the Judge Advocate General to represent the petitioner before the Court of Military Appeals. He assigned the same errors in his petition for review before the Court of Military Appeals which he had urged before the Board of Review, which included the contention he now raises that the Law Officer committed prejudicial error in instructing the court on the defense of insanity. He assigned as a new error the claim that petitioner was legally insane at the time of the commission of the offense, submitting in support thereof the report of the Medical Board of Officers which had found him insane. In reply to the petition and assignment of errors, Government counsel submitted the report of the Surgeon General of the Army which disagreed with the findings of the Medical Board of Officers. The Court of Military Appeals ordered the record of trial remanded to the Judge Advocate General for return to the Board of Review in order that it consider and

evaluate the report of the Medical Board of Officers and the Surgeon General and make a factual determination of the issues on the sanity of the petitioner at the time of the commission of the offenses.

In the remand proceedings before the Board of Review, petitioner submitted a supplemental assignment of errors in which he contended that he was legally insane at the time of the commission of the offenses. The Board of Review ordered the petitioner examined by another Board of Medical Officers for its determination of the mental responsibility of the petitioner at the time of the commission of the offenses. A Board of three medical officers, properly constituted, rendered a finding that petitioner was legally sane at the time of the commission of the offenses. This medical report was submitted to the Board of Review for its determination of petitioner's mental responsibility. It determined that petitioner was legally sane, and again found that the findings of guilty and the approved sentence were correct in law and in fact.

Thereafter, petitioner again filed a petition in the United States Court of Military Appeal for a review of the decision. The same errors were assigned as had been previously assigned and considered. Thereafter, the United States Court of Military Appeals granted the petition for grant of review but limited the issues to two questions. These were: 1. Did the law officer commit prejudicial error in instructing the court-martial that insanity may be easily feigned and that this could be taken into account in weighing the evidence pertaining to the issue of the petitioner's insanity? 2. Whether the law officer erred in not defining murder in regard to Charge II.

Oral arguments were addressed to the Court of Military Appeals on these issues. Thereafter, by a vote of two to one, the court of Military Appeals affirmed the decision of the Board of Review holding that the law officer adequately defined murder and that petitioner's rights were not substantially affected by the law officer's instruction that insanity may be easily feigned. The military review proceedings, having been exhausted, the sentence was put into effect.

In a law court, when a defendant's insanity is injected into the trial, it becomes the duty of the court to halt the trial until that question has been determined. But military procedure does not seem to be the same. It may be fairly said that the question of petitioner's sanity was called to the attention of the military authorities when petitioner's attorney cross examined government witnesses with respect to his sanity in the preliminary investigation. No request, however, was made for the appointment of a commission. But the authorities whose duty it was to review the case to determine whether prosecution should be instituted considered the question and determined that petitioner was mentally competent. After his conviction and when, during the review proceedings, a request for a commission was made, such a commission was appointed and by majority vote found petitioner sane.

■ In the Burns case, supra, the Supreme Court upheld the military conviction where the issue of sanity was not determined by a commission until after the conviction. The only apparent difference as far as the record reveals between that case and this one is that there no reference was made to defendant's mental status until after the trial. But the important point is that when the issue was presented for determination, it was considered and decided by a competent commission. So here, when the defendant put the question of his mental status in issue by requesting the appointment of a commission, it was considered and decided. In the court's opinion, the fact that a sanity commission was not appointed merely because some cross examination of Government witnesses by petitioner's counsel in the preliminary hearing was had, and when no request was made for the appointment of such a commission, does not constitute

such a lack of due process as to give this court jurisdiction.[1]

The contentions that the law officer's instructions were fatally defective because they did not state that lesser elements of the offense than that charged were included and his instruction that insanity could be easily feigned were submitted to the reviewing authorities. They gave serious consideration to these assignments and decided them against the petitioner. It is sufficient to say that the court is of the view that it may not independently re-examine these two assignments of error.

Is Is, By The Court, Considered, Ordered and Adjudged that the writ be discharged and that the petitioner be remanded to the custody of the respondent Warden.

[1.] In Brown v. Sanford, 5 Cir., 170 F.2d 344, 345, under somewhat similar facts, the court held that the failure of the court-martial to order a more complete and detailed investigation of the sanity of appellant did not constitute a denial of due process.

In Cochrane v. Zuppann, D.C., 89 F. Supp. 329, the Board was appointed only after the trial. The court held that this did not constitute denial of due process.